# WEST 70TH, INC., FORMERLY THE GOLD HARE, INC. v. STAN KOCH.

213 N. W. 2d 332.

December 7, 1973—No. 43960.

*Robert A. Hillstrom,* for appellant.

*A. H. Michals* and *Austin D. Ditzler,* for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Gillespie, JJ.

PER CURIAM.

This is an appeal by plaintiff, West 70th, Inc., from an order denying a new trial. We affirm.

The main issues are whether defendant, Stan Koch, properly renegotiated an assigned lease and whether payment of principal on defendant's promissory note to plaintiff was effectively accelerated. The determinative facts are not in dispute. Plaintiff sold to defendant a barbershop business for which defendant, by his promissory note, agreed to pay $16,500 in installments of $284 or more per month. Plaintiff did not own the barbershop premises but warranted and represented to defendant that it had the right to assign its lease on the barbershop premises to defendant. Plaintiff breached this warranty of title by failing to obtain from the lessors written approval of the assignment of the lease to defendant. Lessors, who occupied the shop next to the barbershop, accepted regular monthly rent payments from defendant for about 20 months. Thereafter, however, lessors

served notice on defendant to vacate the barbershop premises because plaintiff had not obtained approval of the assignment. Plaintiff, after consulting his lawyer, advised defendant that he was rightfully in possession of the premises because the lessors had not made a timely assertion of their rights. In addition, plaintiff offered to assist in defending against the threatened eviction.

Rather than risk a lawsuit, defendant renegotiated the lease with the lessors, whereby defendant incurred a $1,500 legal expense. Under the new lease, which increased the rent by $75 per month, defendant gained certain advantages not available under the old lease. Defendant's next monthly installment check to plaintiff was only $209 rather than $284 and it was accompanied by a letter explaining that the $75 decrease was to compensate for defendant's increased rental under the renegotiated lease. Plaintiff negotiated the check and its attorney wrote a letter to defendant demanding payment of the $75. Defendant sent plaintiff a check for that amount, and plaintiff negotiated the check.

Plaintiff then brought this action for the entire balance remaining on the note and returned the $75. Defendant counterclaimed for the legal expense and the increase in rent caused by renegotiation of the lease. The trial court found that plaintiff had no right to accelerate payment of the note because defendant was not in default; that even if plaintiff had a right to accelerate, it did not sufficiently express its election to do so; that, in any event, plaintiff waived any right to accelerate it may have had; and that defendant was entitled on its counterclaim to offset one-half of the legal expense ($750) against the principal amount of the note and one-half of the monthly increase in rent ($37.50) against the monthly installments of the note. The trial court assigned one-half of the legal expense and rent increase to the additional advantages defendant gained under the new lease.

■ Plaintiff contends that defendant wrongfully renegotiated the lease which plaintiff attempted to assign to defendant without the lessors' written approval. Plaintiff does not dispute that

its lease required the lessors' consent for assignment or that he failed to obtain consent, but argues that lessors' acceptance of 20 months' rent from defendant constituted a waiver of lessors' right to object to the assignment and that, as a result, defendant was not warranted in renegotiating the lease rather than fighting the threatened eviction.

By receiving rent from an assignee with knowledge of an assignment, a lessor waives his right to object that the assignment was, contrary to lease provisions, without his consent. Cohen v. Todd, 130 Minn. 227, 153 N. W. 531 (1915). Plaintiff argues that if defendant had fought the lessors' threatened eviction, defendant would have prevailed since the lessors, who had knowledge of the assignment, waived their right to object to the assignment by accepting rent payments from defendant. Whatever merits that argument may have, we agree with the trial court that defendant should not be required to risk losing his business in litigation. The trial court stated in its memorandum:

"As the plaintiff has well pointed out, the lessors probably would have been ruled to have waived the illegal assignment of the lease to the defendant by their conduct if the defendant had seen fit to contest this claim of the lessors. However, the defendant was in jeopardy and no one can be assured of the outcome of a lawsuit in which a waiver is claimed. Therefore, in my opinion, the defendant was justified in paying a reasonable amount to the lessors to settle this claim of the lessors."

Plaintiff (and only plaintiff) could have prevented the entire controversy by obtaining lessors' consent to the assignment which, according to the lease, could not be unreasonably refused. In contrast, defendant, who was in danger of losing his business, appears to be an innocent victim. Even if the risk of litigation was minimal, defendant was reasonable in avoiding litigation through renegotiation of the lease.

■ Plaintiff also contends that the trial court erred in finding that payment of principal on the promissory note was not accel-

erated. We agree with the trial court that plaintiff had no right to accelerate payment because defendant was not in default. As pointed out by the trial court, Shinners v. Ford, 151 Minn. 328, 186 N. W. 704 (1922), establishes that a warranty of title in connection with the assignment of a lease is breached when the lessee fails to obtain the written consent of the lessor to the assignment. Thus, the trial court properly ruled that plaintiff's breach of warranty of title in not obtaining the lessors' consent to the lease assignment to defendant constituted a partial failure of consideration for the installment note and was, as a result, a defense pro tanto against plaintiff. 2 Dunnell, Dig. (3 ed.) § 1017.

We have considered other contentions of plaintiff and find them without merit.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.